Howell, J.
On 26th April, 1861, one R. B. Griffin gave to A. B. James & Oo., the following order:
“New Orleans, April 26th, 1861.
Moses Greenwood, Esq.:
Please deliver to the order of A. B. James & Oo., twenty-two bales of cotton in your hands belonging to me; and also, transfer to their order bill of 'ading for ten bales cotton, .more or less, that will be consigned to you by me, which are not yet arrived. The last ten bales on-
(Signed) R. B. Gbieein,
per A. Gordon.”
Across the face of this is the following:
“This cotton or proceeds shall be delivered or paid to A. B. James & Oo.
(Signed) Moses Greenwood.”
“ April 27, 1861.”
It is alleged that the defendant subsequently received twelve other bales of cotton belonging to said R. B. Griffin; but that he has failed to deliver any of the cotton or proceeds according to said agreement; that it was all shipped to England, and there sold for account of defendant, and worth at the time four thousand dollars, which he refuses to pay, though amicably demanded.
On the 1st May, 1861, one N. S. Williams gave to the said A. B. James & Oo. the following draft:
“ Lewisburg, Arkansas, May 1, 1861.
Mr. Greenwood:
Please pay to A. B. James & Oo. one thousand dollars at ten days after sight, and charge to account of your obedient servant.
(Signed! N. S. Williams,”
Upon its presentation, Greenwood replied as follows:
“ New Orleans, May 9, 1861.
Messrs. A. B. James & Co., present:
Bear Sirs — The draft of N. S. Williams in your favor, at ten days’ sight for 11,000, will not he accepted.
“ Mr. Williams has in my hands 22 bales cotton, on which I have advanced, say $150; there is also the freight, river and fire insurance, and the charges of drayage, storage, sampling, weighing and commissions. I will deliver the cotton to be shipped to Liverpool for Mr. Williams’ account, you paying me the above advances and expenses, or I will ship it to Liverpool, you having proceeds, less my account, etc.
“ The 12 bales for R. B. Griffin will also be delivered to you if desirous. Please let me know your decision, and oblige, Yours, &c.
(Signed) Moses Greenwood.”
*298 It is alleged that the latter portion of the above proposition was accepted, and the 22 bales left in the hands of defendant to be shipped accordingly, which was done, and that the proceeds thereof amount to three thousand five hundred dollars, which defendant refuses to pay, although amicably demanded; and plaintiff, as receiver, asks judgment for the two sums, amounting to $7,500.
The defendant denies all liability, as charged, and avers that at the time the Ch-iffin order was presented, he had in his possession only 13 bales, (one of which was badly damaged) to which said order could refer; that he had then shipped 9 bales to Liverpool, and on 29ih May received 6 bales, making in all 28 bales covered by said order; that he has rendered full account of the 9 bales shipped to Liverpool, and repeatedly offered to deliver the remaining 19 bales to A. B. James & Co., who declined and neglected to receive the same; that in consequence of the blockade of the port of New Orleans in 1861, it became impossible for him to sell or ship said cotton, which remained on storage until the-day of April, 1862, when, without his fault, it was destroyed by the military authorities having control of this city; that as respects the Williams draft, he refused to accept it, but offered to transfer to James & Co., or ship for their account, 22 bales of the drawer’s cotton on certain conditions, which alternative offer was refused; and that in consequence of the blockade he was unable to ship or sell the same, and it was likewise destroyed as the Griffin cotton was. In a supplemental answer, he admitted owing the plaintiff (receiver) $490 93 proceeds, with interest, of the 9 bales Griffin cotton shipped to Liverpool, and also having $20 48 to the credit of Williams, which, though not bound so to do, he is willing to pay to plaintiff, and deposited said sums in court. • -
The District Judge gave judgment in favor of plaintiff for the sums deposited, and condemned him to pay costs after date of deposit, from which he appealed.
It will be perceived that the defendant is charged with having shipped to England, and sold for his own account the cotton in the Griffin order, and with having shipped the Williams cotton for account of Jamos & Co.; which he says, that at the date of the first order, he had already shipped 9 bales of the Griffin cotton to Liverpool, for which he accounts, and that he offered to deliver the balance, comprised in both demands; that neither of his offers, in regard to the Williams cotton, was accepted; and that in consequence of the blockade of this port he could neither ship nor sell any of said cotton, and it was burned without his fault.
The evidence satisfies us that the 9 bales were shipped as alleged, and that the balance of the cotton, except a few bales, was taken from the press, without defendant’s consent, and destroyed by lawless men, upon the approach to this city of the Federal fleet, in April, 1862; but it is difficult, from the peculiar pleadings and the conflicting testimony upon the question of a default, to determine who must bear the loss.
Plaintiff’s clerk ‘fies that the defendant agreed to ship the cotton to Liverpool for account of plaintiff; that he called frequently on defendant in regard to it, and was answered that the returns of sales had not been received from England, and that in these interviews no particular1 cottgn was specified, ho being under the conviction that the cotton fig *299 spoke of was the Williams and the Griffin cotton. While the defendant’s clerk testifies that the answers to the former witness, who merely inquired about the matter of Williams and Griffin, referred to the -cotton which had been shipped, and that the said witness was informed that the balance, not shipped, was at plaintiff’s disposal.
In this conflict of testimony, we must be guided by the opinion of the lower Judge, who had the witnesses before him, saw their manner of testifying, and was better able than we are to give just weight to, their respective statements. And he, it seems, gave greater creditto defendant’s witness, and relieved the defendant from responsibility. We are sustained in this course by the rúle, that the plaintiff must make his case clear. The facts in this case raise the presumption that his witness was mistaken.
And under this state of facts the defendant must be viewed as a depositary of the cotton in his possession, and it was the duty of the plaintiff to put him in default, of which there is no satisfactory proof, the demand shown having reference only to the returns of the cotton that had been shipped.
We do not construe the defendant’s answer, as admitting necessarily that he agreed to sell or ship.as charged, but in the light of the evidence, as accounting for the cotton being exposed -to destruction after such a lapse of time, the plaintiff having neglected to demand or receive the delivery, and the port having been closed, it became impossible for him (defendant) to dispose of it.
It appears, however, from the testimony of the proprietor of the Louisiana Ootton Press, that the defendant gave an order for-the delivery of sixty bales to a Confederate gun-boat, and among that number were eight bales of the cotton now in controversy, and which were not destroyed as set out in the answer; for this occurred in September, .1861, prior to the transfer of his cotton from said press to Terrill’s press, from which latter press the cotton was taken and destroyed in April, 1862. There is nothing in the record which excuses the defendant for making this disposition of the cotton or explains the object thereof, and he cannot be protected by the supposition that had he not delivered it to the gun-boat, it would have been burned with the other. This was a voluntary act, in violation of his obligation as depositary or agent, and his responsibility attached before any overpowering force was used as to the other cotton.
Upon the evidence before us, we estimate those eight bales to be worth $441 60, which, added to the two sums allowed in the lower court, makes the sum of $953 01 to which plaintiff is entitled.
It is therefore ordered that the judgment appealed from be reversed, and that plaintiff, as receiver, recover of defendant, Moses Greenwood, the sum of $953 01, with legal interest from judicial demand, and costs in both courts, subject to a credit of $511 41 on 18th April, 1866.